**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 18-CV-24726-SMITH/LOUIS

ALBERTO GUEVARA,

      Plaintiff,

v.

FLORIDA EAST COAST RAILWAY, LLC.,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon Defendant Florida East Coast Railway, LLC's Motion to Tax Costs (ECF No. 67) and Motion for Award of Attorney's Fees and Supporting Memorandum of Law (ECF No. 80). The Motions were referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, by the Honorable Rodney Smith, United States District Judge (ECF No. 71, 84). The Court has carefully reviewed the Parties' submissions and is otherwise duly advised in the premises. Upon consideration, the undersigned recommends that Defendant's Motion to Tax Costs be **GRANTED, in part** and Defendant's Motion for Award of Attorney's Fees be **DENIED**.

### A.  Factual Background

This case began when Plaintiff Alberto Guevara sued his former employer, Defendant Florida East Coast Railway, LLC ("FEC"), for discriminating and retaliating against him in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Florida Civil Rights Act ("FCRA").

1

Plaintiff is a Hispanic male, who was born in Honduras.[1] FEC is a regional railroad that owns and operates mainline track from Jacksonville to Miami, Florida. Plaintiff was hired by FEC as a Signal Maintainer ("Maintainer"). Upon hire, Maintainers have a 180-day qualifying period in which they must meet the following requirements: (1) pass a written, multiple-choice test; (2) pass a field performance tests; and (3) obtain a Class B Commercial Driver's License ("CDL License").

In April 2015, FEC investigated, charged, and dismissed Plaintiff in connection with an incident where Plaintiff was allegedly working in the middle of a train track without sufficient roadway worker protection. Plaintiff, through a union, challenged the FEC's decision and Plaintiff was reinstated as an Assistant Maintainer and gave him an additional 180 days to complete the requirements of the position. Plaintiff missed that deadline and was provided two additional extensions.

In July 2016, Plaintiff submitted a vacation request for September 2 to September 6, 2016, which was approved. Plaintiff's vacation approval was rescinded, and Plaintiff was instructed to remain in town for the weekend because he would be on-call. Plaintiff's union representative, disagreed with FEC's decision to put Plaintiff on-call since the company still had not qualified him but, nonetheless, advised Plaintiff to appear for his shift. Plaintiff did not do so, rather, he turned off his phone and missed several calls.

On September 9, 2016, Plaintiff emailed two employees in the Human Resources Department, copying a union representative, stating that he had been targeted by FEC's middle management team, cautioning that if the misconduct did not stop he would file a charge with the Equal Employment Opportunity Commission.

---

[1] The undisputed facts of this case were memorialized in the Court's Order on Defendant's Motion for Summary Judgment (ECF No. 65).

On September 13, 2016, Plaintiff received a letter disqualifying him as a Maintainer since, as of that date, Plaintiff still had not met qualification requirements. The disqualification letter informed Plaintiff that he retained his seniority rights and was being provided an opportunity to bid on other open positions within 5 days. Plaintiff did not exercise these options. On September 21, 2016, Plaintiff received a second letter placing him on a furlough (unpaid leave).

On February 10, 2017, Plaintiff filed a Charge of Discrimination, alleging that Plaintiff was subject to disparate and discriminatory treatment by FEC because of his race, color, and national origin, and that he was subject to retaliation. Plaintiff stated that "Caucasian American employees" were afforded more favorable treatment in training and in terms of job support. Plaintiff also alleged that only after he had taken the "promotion test several times" was he informed that a 90% score was needed to pass – which was not required of "Caucasian employees" and not a score stated in the union agreement. Consistent with the controlling union agreement, in October 2017, Plaintiff was terminated from FEC because he had not performed any services for FEC for a year.

## B. Procedural Background

On October 12, 2018, Plaintiff initiated this action by filing his Complaint with the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida. Plaintiff alleged claims of disparate treatment and retaliation under the FCRA and Title VII.

Defendant removed the action to this Court. Defendant moved to dismiss Plaintiff's retaliation claim for failure to state a claim (ECF No. 8); the Court denied the motion (ECF No. 19). Defendant later moved for summary judgment, which the Court granted, finding that Plaintiff failed to establish a *prima facie* case of disparate treatment because he did not show he was qualified for his position at FEC or that he was treated less favorably than other similarly situated

employee outside his protected class; and that he failed to establish a causal connection between his protected conduct of reporting of discriminatory treatment and his termination (ECF No. 65). On October 3, 2019, the Court entered a final judgment in favor of FEC (ECF No. 66). Plaintiff appealed the Court's judgment and that appeal was dismissed for failure to pay appellate filing fees (ECF No. 87).

On December 2, 2019, Defendant filed its Verified Motion for Award of Attorney's Fees and Supporting Memorandum of Law seeking attorney's fees in the amount of $199,104.40 (ECF No. 80). The Motion bears a certificate of conferral representing that counsel for Defendant conferred with Plaintiff's counsel at the time, who advised that Plaintiff objected to Defendant's entitlement to fees, not to the amount sought. After Plaintiff's counsel withdrew from this action, Defendant certified he contacted Plaintiff via email on two occasions in an attempt to confer, but both emails went unanswered. In support of its request for fees, Defendant submitted a record of counsels' time entries and the affidavits of two senior attorneys who worked on the matter.

Defendant asserts that it is entitled to an award of attorney's fees because Plaintiff's claims lacked merit as demonstrated by the order granting Defendant's motion for summary judgment. Defendant argues Plaintiff failed to advance any evidence in support his claims, and also notes that it made nominal settlement offers: the first during mediation and the second one month before trial.

In response, Plaintiff challenges Defendant's representation that the parties meaningfully conferred as required by Local Rule 7.3 (ECF No. 82). Plaintiff avers that Defendant served the draft motion for attorney's fees without providing any documentation in support of the fees requested. Plaintiff also emphasizes that Defendant is not entitled to attorney's fees because it has not demonstrated that Plaintiff's claims were frivolous. Defendant did not file a Reply.

Defendant also moved to tax costs (ECF No. 67). Plaintiff opposes that motion as well, challenging Defendant's request for costs for witness fees and copying costs (ECF No. 75). The Court addresses both motions below.

## C. Motion for Attorney's Fees (ECF No. 82)

### 1. Compliance with Local Rule 7.3

Defendant's Motion certifies that it complied with the requirements of Local Rule 7.3 and that the Parties had conferred in good faith. Plaintiff contests Defendant's certification, asserting that no such conferral occurred with Plaintiff and that Defendant did not address or submit any applicable fee agreement or invoices supporting its Motion. Defendant did not file a reply and did not seek an extension of time to do so.

Local Rule 7.3(a)(4) states that a motion for attorney's fees shall "disclose the terms of any applicable fee agreement." Local Rule 7.3's requirements are not optional, but mandatory. *Norych v. Admiral Ins. Co.*, No. 08–60330–CIV–ALTONAGA, 2010 WL 2557502, at *2 (S.D. Fla. Jun.23, 2010). A party's failure to comply with Local Rule 7.3 is a sufficient basis to deny its fees and costs motion. *J.B. Hunt Transp., Inc. v. S & D Transp., Inc.*, 589 F. App'x 930, 933 (11th Cir. 2014) ("Because the district court held that J.B. Hunt failed to comply with Local Rule 7.3, which constituted an independently sufficient basis to deny J.B. Hunt's motions, we affirm.").

Here, Defendant does not dispute that it failed to provide the terms of any applicable fee agreement to Plaintiff. Additionally, Defendant's attempts to confer with Plaintiff, two unanswered emails to Plaintiff at a time when he was not represented, does not constitute meaningful conferral efforts. The Motion could be denied on this ground alone. *See Sriskada v. Harbor Pita, Inc.*, No. 14-20526-CIV, 2015 WL 4041298, at *1 (S.D. Fla. July 1, 2015) (denying motion for fees for failure to disclose the terms of any applicable fee agreement as required by

Local Rule 7.3(a)(4)).

Notwithstanding, the undersigned has considered the merits of Defendant's Motion, which likewise leads to the recommendation that it be denied.

## 2. Entitlement to Attorney's Fees

Title VII of the Civil Rights Act of 1964 authorizes the award of attorney's fees in certain circumstances. The statute provides that "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs." 42 U.S.C. § 2000e–5(k). "When a defendant is the prevailing party on a civil rights claim, the Court has held, district courts may award attorney's fees if the plaintiff's claim was frivolous, unreasonable, or groundless, or if the plaintiff continued to litigate after it clearly became so." *CRST Van Expedited, Inc. v. E.E.O.C.*, 136 S. Ct. 1642, 1646 (2016) (internal quotations omitted).

In determining whether a claim is frivolous, a court must analyze whether the case is so lacking in arguable merit so to be groundless or without foundation, rather than on the question of whether the case was successful on its merits. *Sullivan v. Sch. Bd. of Pinellas Cty.*, 773 F.2d 1182, 1189 (11th Cir. 1985). In cases where the plaintiff adduces evidence sufficient to support their claims, findings of frivolity typically do not stand. *Id.*; *see also Hurtado v. Raly Dev., Inc.*, No. 11-24476-CIV, 2012 WL 3687488, at *6 (S.D. Fla. Aug. 27, 2012) (quoting *Dulaney v. Miami–Dade Cnty.*, No. 09–23259–CIV, 2011 WL 6754074, at *2 (S.D. Fla. Dec.22, 2011)). Factors also considered important in determining whether a claim is frivolous include: (1) whether the plaintiff established a *prima facie* case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits. *Sullivan*, 773 F.2d at 1189; *see also Cordoba v. Dillard's, Inc.*, 41 F.3d 1169, 1179 (11th Cir. 2005). No one factor

is dispositive, and the Court must consider the case as a whole and determine whether the claim was entirely without foundation. *Id.* In determining whether a claim was frivolous, courts view the evidence in the light most favorable to the non-prevailing plaintiff. *Id.*

### 3. Discussion

After a thorough review of the entire record and in consideration of the *Sullivan* factors, I find Plaintiff's claims do not rise to the standard of frivolity because Plaintiff advanced some evidence in support of his claims. *See Sullivan*, 773 F.2d at 1189; *Dulaney*, 2011 WL 6754074, at *2; *Evans v. St. Lucie Cty. Sch. Dist.*, No. 2:17-CV-14450, 2019 WL 3997126, at *2 (S.D. Fla. Aug. 23, 2019).

#### a. *Sullivan* Factors

The Court's analysis of the first *Sullivan* factor (whether Plaintiff established a *prima facie* case) requires parsing of Plaintiff's claims for disparate treatment and retaliation. *Evans*, 2019 WL 3997126, at *2.

Plaintiff brought a claim of disparate treatment[2] against Defendant alleging that it discriminated against him on the basis of age, race, color, and national origin by terminating his employment as a Maintainer. Plaintiff also alleged that Defendant terminated his employment in retaliation[3] for Plaintiff filing discrimination complaints with the human resources department. The Court concluded on summary judgment that Plaintiff had failed to meet his burden as to both

---

[2] To establish a *prima facie* case of disparate treatment a plaintiff must show: (1) he is a member of a protected class; (2) he was subjected to adverse employment action; (3) his employer treated similarly situated employees outside the protected class more favorably; and (4) he was qualified to do the job. *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000).

[3] To establish a *prima facie* case of retaliation under Title VII, a plaintiff must demonstrate: (1) that he engaged in statutorily protected activity; (2) that he suffered adverse employment action; and (3) that the adverse employment action was causally related to the protected activity. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998). "To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." *Shannon v. Bellsouth Telecommunications, Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (internal quotations omitted).

claims.

       With respect to his disparate treatment claim, the Court found that Plaintiff had failed to show that he was qualified for his position as a Maintainer and had failed to show a comparator outside his protected class that was treated more favorably. The Court also found that Plaintiff had not established a *prima facie* case of retaliation because he could not show a causal connection, specifically that Plaintiff did not show that a key decision maker was informed of Plaintiff's complaint of discrimination and that Plaintiff's conduct had broken the chain of causation. The Court also found that Defendant had provided a nonretaliatory justification for Plaintiff's placement on furlough and termination, which Plaintiff did not show was pretextual. Accordingly, this factor weighs in favor of awarding attorney's fees to Defendant.

       The second *Sullivan* factor (whether the defendant offered to settle) is neutral as neither party provided the Court with sufficient information about the settlement offers or demands made, and thus, there is no basis for the Court to weigh this factor against or in favor of an award of attorney's fees. *See Dulaney*, 2011 WL 6754074, at *3; *see also Evans*, 2019 WL 3997126, at *2 (S.D. Fla. Aug. 23, 2019).[4] The third factor (whether the trial court dismissed the case prior to trial) weighs in favor of attorney's fees as the Court dismissed Plaintiff's claims on summary judgment. *See Evans*, 2019 WL 3997126, at *2.

**b. Plaintiff's Claims Are Not Frivolous**

       Although some of the *Sullivan* factors weigh in favor of awarding fees, the Court must consider the case as a whole and determine whether Plaintiff's claims were so unreasonable and

---

[4] Defendant, citing to *Hamilton v. Sheridan Healthcorp, Inc.*, 700 F. App'x 883 (11th Cir. 2017), argues that the Court should find it weighs in favor of attorney's fees because Defendant only made nominal offers to settle the case during mediation and one month before trial. Defendant's reliance on *Hamilton* in support of this proposition is misplaced because in that case the court compared plaintiff's demand to the nominal settlement offer. Here, Defendant did not provide any facts regarding the settlement offers for which the Court could compare the offers to Plaintiff's demand. Defendant did not ask for a hearing or even file a reply to refute Plaintiff's argument that this factor weighed in his favor. Accordingly, this factor does not weigh in favor of fees.

unsupported by evidence to be deemed frivolous. *See Sullivan*, 773 F. 2d at 1189; *Evans*, 2019 WL 3997126, at *2 (S.D. Fla. Aug. 23, 2019); *Dulaney*, 2011 WL 6754074, at *3 (S.D. Fla. Dec. 22, 2011). Defendant argues that Plaintiff's disparate treatment claim is frivolous because he failed to advance any evidence showing that he was qualified to perform the functions of a Maintainer and because he did not advance any comparator evidence. In response, Plaintiff argues that he had a reasonable basis to believe he was qualified for his position. Plaintiff also argues that despite the Court ultimately finding that Plaintiff had not identified a comparator in all relevant respects, he did identify three persons that the Court ultimately rejected and thus, because he advanced some evidence in support of his claim it cannot be said to be frivolous.

Here, Plaintiff's claims were undeniably weak. However, I do not find that either claim is groundless or without foundation as Plaintiff advanced some evidence in support of his claims and had a good faith basis for bringing the claims; this mitigates against a finding of frivolity. *Sullivan*, 773 F. 2d at 1189.

For instance, in support of Plaintiff's claim that Defendant's discriminatory conduct rendered him unqualified, he presented evidence that Defendant did not disclose that employees were required to obtain a 90% score on the written test and that different versions of the exam were administered to different employees. Plaintiff also argued that his supervisor undermined his chances of passing the test because the contents of the exam were at his supervisor's discretion. In support of that argument, Plaintiff presented average and below performance evaluations completed by his supervisors, which he asserted was evidence his supervisor's motivation for sabotaging his evaluations and exams. Because Plaintiff advanced evidence in support of his claim, based on this fact pattern, I find it was not frivolous.

Moreover, Plaintiff reasonably speculated that he was treated unfavorably on the basis of

his race and national origin. Plaintiff offered the testimony of one other employee who stated he felt discriminated against by Plaintiff's supervisor. Additionally, Plaintiff identified one other Maintainer outside of Plaintiff's protected class who, like Plaintiff, had missed a call while on duty and had not been put on unpaid leave. Although the Court found that none of these individuals were similarly situated to Plaintiff, he nonetheless advanced evidence supporting his speculation that he had been terminated on the basis of race or national origin and thus, his claim for disparate treatment is not frivolous. *See Lawver v. Hillcrest Hospice, Inc.,* 300 F. App'x 768, 774 (11th Cir. 2008) (reversing district court's award of attorneys fees in Title VII discrimination case because plaintiff's claim was not frivolous as plaintiff reasonably speculated that she had been terminated on the basis of gender or age because she identified one male coworker who was not terminated and evidence of two other employees stating they had observed gender discrimination); *see also Evans v. St. Lucie Cty. Sch. Dist.*, No. 2:17-CV-14450, 2019 WL 3997126, at *3 (S.D. Fla. Aug. 23, 2019) (denying defendant's motion for attorney's fees in discrimination case, finding that plaintiff had proffered a comparator who was similar to plaintiff in at least some respects although the court found that the comparator was not sufficiently similar to be "nearly identical").

Defendant relies on *Hamilton v. Sheridan Healthcorp, Inc.*, 700 F. App'x 883 (11th Cir. 2017), for the proposition that Plaintiff's failure to identify any comparators that were treated more favorably than him despite similar conduct weighs in favor of attorney's fees. *Hamilton* is distinguishable because the plaintiff there did not identify *any* comparators with respect to his transfer to day shift or his termination. *Id*. at 886. The appellate court further found that any inference of discrimination was further weakened in light of plaintiff's disciplinary history. *Id*.

Defendant also argues Plaintiff's retaliation claim was frivolous because Plaintiff failed to show a causal link between the protected activity and Plaintiff's placement on unpaid leave

because Plaintiff did not show that all decision makers had knowledge of the protected activity; and that Plaintiff broke the chain of causation through his own misconduct. In response, Plaintiff argues that he offered evidence that at least two decision makers were copied on his email complaining of discrimination by his supervisors and that it was reasonable for him to believe that the decision makers copied in the email, who were in the human resources department, would have shared the information with upper management, including his direct supervisors. Moreover, Plaintiff argues that he introduced evidence that within one month of Plaintiff's report of discriminatory conduct, Defendant placed him on unpaid leave.

The Court finds guidance in *Cordoba*, cited by both Parties, wherein the Eleventh Circuit held that although the plaintiff's claims were found to be speculative and insufficient to survive summary judgment, plaintiff's claims were not so unreasonable so as to be deemed frivolous, stating:

> it is important that courts not engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

*Cordoba*, 419 F.3d at 1181–82. On direct appeal, the court had affirmed the district court's entry of summary judgment for defendant and held that plaintiff's constructive notice theory that her supervisor (the ultimate decision maker) had knowledge of plaintiff's disability before terminating her, a prerequisite for finding liability under the ADA, was pure conjecture. *Id*. The Court nevertheless reversed the district court's finding that the plaintiff's claims were frivolous and award of attorney's fees; explaining that plaintiff's claims were not frivolous because of the factual

circumstances surrounding her termination, particularly that other employees including one of her supervisors (but not the ultimate decision maker) became aware of her disability one month before plaintiff's termination.

Here too, Plaintiff introduced evidence that employees in the human resources department were aware of Plaintiff's complaints of discrimination one month before Plaintiff was placed on unpaid leave, and that one of human resources employees had testified that she had consulted several other decision makers prior to issuing the September 13th disqualification letter. Under these circumstances, it was not so unreasonable for Plaintiff to speculate that all key decision makers had knowledge he had made discrimination complaints, and thus his retaliation claim is not frivolous.

Defendant further argues that Plaintiff's retaliation claim was frivolous because, as the summary judgment order explains, he failed to show pretext and because the Court found that Plaintiff's conduct caused a break in the chain of causation. First, a plaintiff should not be assessed fees because a defendant can offer a convincing non-discriminatory basis for its conduct. *See Evans*, 2019 WL 3997126, at *4. Additionally, Defendant has not advanced any case law in support of the proposition that a finding of a break in causation is basis for finding that a retaliation claim is frivolous.

Finally, in determining frivolity, courts also consider whether a plaintiff's claims are meritorious enough to receive careful attention and review. *Mersch*, 2011 WL 13175630 at *6 (citing *Walker v. Nationsbank of Florida, N.A.*, 53 F.3d 1548 (11th Cir. 1995)); *Dulaney*, 2011 WL 6754074, at *3 (citing *Sullivan*, 773 F.2d at 1189)). Here, the Court gave both of Plaintiff's claims careful attention as is evidenced by the detailed 32-page order on Plaintiff's two counts. Plaintiff advanced evidence in support of his claim, which warranted the court's careful review, in

contrast to cases where frivolity has been found because those plaintiffs did not advance any evidence in support of their claims. *Dulaney*, 2011 WL 6754074, at \*3 (citing *Cordoba*, 419 F.3d at 1176)). I also consider that Defendant did not move to dismiss Plaintiff's disparate treatment claims and that the Court denied its motion to dismiss Plaintiff's retaliation claim. *Id*.

For these reasons, I find that Plaintiff's claims were not frivolous, and an award of attorney's fees not warranted under *Sullivan*.

### D. Defendant's Motion to Tax Costs

Defendant filed a Verified Motion to Tax Costs seeking costs in the amount of $8,898.08, consisting of: $400.00 in filing fee, $518.00 in service of summons and subpoena, $6,276.05 in fees for printed or electronically recorded transcripts, $536.30 in witness fees, and $1,167.73 in exemplification and the costs of making copies (ECF No. 67-1). Defendant attached invoices in support of its request to tax costs (ECF No. 67-2). Plaintiff opposes only Defendant's request for a $400 witness fee for Dr. Luis Hines and copying costs related to Defendant's Motion for Summary Judgment and copying of trial exhibits.

Defendant, as the prevailing party, is entitled to recuperate costs associated with the litigation. Federal Rule of Civil Procedure 54(d)(1) allows prevailing parties to receive litigation costs other than attorney's fees. There is a "strong presumption" in favor of awarding taxable costs to the prevailing party, which the challenging party has the burden to overcome. *Mathews v. Crosby*, 480 F.3d 1265, 1276 (11th Cir. 2007). Pursuant to 28 U.S.C. § 1920, a district court may tax as costs: "(1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title." "[A]bsent explicit statutory or contractual authorization, federal courts are bound by the limitations set out in 28 U.S.C. § 1920." *Arcadian Fertilizer, L.P. v. MPW Indus. Servs., Inc.*, 249 F.3d 1293, 1296 (11th Cir. 2001) (citation omitted). "The party seeking costs bears the burden of submitting a request for expenses that enables the court to determine what expenses were incurred and whether those expenses meet the proof of necessity and reasonableness under 28 U.S.C. 1920." *Shave v. Stanford Fin. Grp., Inc.*, No. 07-60749-CIV, 2008 WL 3200705, at *4 (S.D. Fla. Aug. 6, 2008).

## 1.  Filing Fees

Filing fees are taxable pursuant to 28 U.S.C. § 1920(1). Plaintiff does not object to the fee. Accordingly, the undersigned recommends that the Court award Defendant $400.00 incurred in filing fees when Defendant removed the case from Florida state court.

## 2.  Process Service Fees

Private process fees may be taxed but must not exceed the $65.00 amount charged by the U.S. Marshal, pursuant to 28 C.F.R. § 0.114. *See Brannon v. Finkelstein*, No. 10-61813-CIV, 2017 WL 1395171, at *13 (S.D. Fla. Feb. 1, 2017), *report and recommendation approved*, No. 10-61813-CV, 2017 WL 1452944 (S.D. Fla. Feb. 17, 2017). Courier fees and postage fees, however, are not taxable. *Katz v. Chevaldina*, 127 F. Supp. 3d 1285, 1293 (S.D. Fla. 2015).

Defendant seeks reimbursement of process service fees in the amount of $518.00, for service of subpoenas to appear at deposition or at trial. In its Motion, Defendant provides an itemized list of all fees incurred serving witnesses for deposition and at trial and advances invoices for each item. None of the service fees exceed $65.00[5] and each item is supported by a

---

[5] To the extent some invoices indicate additional fees such as a rush fee or a service fee, Defendant does not seek reimbursement of same.

corresponding invoice. Accordingly, Defendant has met its burden, and indeed, Plaintiff does not challenge any of the service fees sought.

The undersigned thus recommends granting the Motion for recovery of process service costs in the amount of $518.00.

### 3.  Witness Fees

Defendant seeks to recover $536.30 in witness fees for the attendance of three lay witnesses at depositions plus mileage. Defendant seeks to recover $66.30 for Osvaldo Devarona's attendance at deposition plus mileage; $70.00 for Ryan Barker's attendance at deposition plus mileage; and $400.00 for Dr. Luis Hines' deposition plus mileage. Defendant supports the first two requests for costs with copies of a check made out to each witness for those amounts. As for Dr. Hines, Defendant supports the request with an invoice in the amount of $450.00 (including a $50.00 service fee, for which Defendant does not seek reimbursement).

Plaintiff does not object to Defendant's request for fees for Devarona and Barker. Upon review of the record, both witnesses' depositions transcripts were submitted in support of the Defendant's Motion for Summary Judgment. Notwithstanding, I recommend that those fees be reduced. 28 U.S.C. § 1821 imposes a statutory limit of $40.00 per day per witness. Accordingly, the undersigned recommends that Mr. Davarona and Mr. Barker's witness fees be reduced to $40.00. *See Brook v. United States*, No. 08-60314-CIV, 2009 WL 2257619, at *5 (S.D. Fla. July 29, 2009) (reducing lay witness fees to the statutory limit of $40.00 per witness, per day). While mileage is a compensable cost, Defendant provided no information for the dates traveled or the miles traveled, and thus has failed to support its demand for the cost of travel incurred for these witnesses.

Plaintiff objects to Defendant's request for a $400.00 witness fee for Dr. Hines, who was

disclosed as a doctor who treated Plaintiff for emotional distress. In support of this cost, Defendant submits one invoice from Williams Process Service, Inc. itemizing a service charge of $50.00 and a "Witness Fee" of $400.00 (ECF No. 67-2 at 30). Defendant offers no explanation for its demand for a witness fee of $400.00. The Court therefore has no basis from which to conclude that Defendant should be awarded any fees beyond the statutorily defined $40.00 per day witness fee.

The undersigned thus recommends granting the Motion in part for recovery of witness fees in the amount of $120.00.

## 4. Copying Costs

Defendant seeks $1,167.73 in costs for copying materials in support for summary judgment provided to the court, trial exhibits, and deposition transcripts and deposition exhibits. Plaintiff objects only to Defendant's costs incurred in making two copies of exhibits to the motion for summary judgment as unnecessary and similarly to Defendant's multiple copies of the exhibits at trial. Defendant did not file a Reply to Plaintiff's objection.

A party may only recover the costs of making copies that were "necessarily obtained for use in the case." 28 U.S.C. § 1920(4). In this district, copies attributable to discovery, pleadings, correspondence, exhibits, documents tendered to the opposing party, copies, and documents prepared for the Court's consideration are all recoverable. *See Fla. Keys Citizens Coal., Inc. v. U.S. Army Corps of Engineers*, 386 F. Supp. 2d 1266, 1270 (S.D. Fla. 2005). General copying costs without further descriptions, or copies made merely for counsel's convenience, such as multiple copies of documents, however, are not recoverable. *Monelus v. Tocodrian, Inc.*, 609 F. Supp. 2d 1328, 1335 (S.D. Fla. 2009).

The party moving for costs has the burden to show that the copies for which reimbursement is sought were necessarily obtained for a reimbursable use in the case. *See Diaz v. AIG Mktg., Inc.*,

No. 09-60011-CIV, 2010 WL 2541872, at *4 (S.D. Fla. June 1, 2010), *report and recommendation adopted*, No. 09-60011CIV, 2010 WL 2541111 (S.D. Fla. June 22, 2010). This requires the moving party to present evidence "regarding the documents copied including their use or intended use." *Monelus*, 609 F. Supp. 2d at 1335 (quoting *Cullens v. Georgia Dept. of Trans.*, 29 F.3d 1489, 1494 (11th Cir. 1994)). The prevailing party "must provide information regarding the purpose of copies charged so the court will be able to determine the purpose of the copies as well as whether the rates paid for copies were reasonable, and whether the copies made were related to the action at issue." *Id.*

Defendant seeks $383.96 for copying costs related to materials provided to the Court in support of Defendant's motion for summary judgment and $235.08 for copying costs for trial exhibits (ECF No. 67 at 4). Defendant provided invoices for these costs, attached to the Motion (ECF No. 67-2 at 32, 33). However, Defendant offers no argument or case law in support of its need for two copies of materials for summary judgment and trial. Nor did Defendant file a Reply to explain its necessity for multiple copies of the materials. Accordingly, Defendant has not met its burden and the Court will not award copying costs incurred simply for counsel's convenience. Accordingly, the costs related to summary judgment materials shall be reduced to $198.23 and the costs of copying trial exhibits shall be reduced to $117.54.

Defendant additionally seeks $37.05 for copies of deposition exhibits provided to opposing counsel during Plaintiff's deposition. There is no invoice in this amount and based on the description (285 pages at $0.13 per page), these costs appear to be subsumed in the invoices that support the demand for copying trial exhibits. If they are not, they are not otherwise evidenced and thus not included in my recommendation.

Finally, Defendant seeks copying costs in the amount of $511.64 for deposition transcripts

to be used at trial. By process of elimination, the invoice submitted to support these costs is the last page of Defendant's Exhibit A to the bill of costs. That invoice does not reflect the amount Defendant here seeks but does include the itemized amount of $478.17 for copying "Transcripts." Adding the state sales tax to that portion of the invoice, the Court arrives at the requested $511.64. Accordingly, this copying cost is supported and compensable.

The undersigned thus recommends granting the Motion in part for recovery of copying costs in the amount of $827.41.

## 5.   Court Reporting and Transcript Fees

Defendant seeks costs for reporting services in the amount of $6,276.05 for court reporting fees related to the depositions of several witnesses. Plaintiff does not object Defendant's requests for these costs.

Costs for deposition transcripts are taxable under 28 U.S.C. § 1920(2) so long as the transcripts were "necessarily obtained for use in the case." *Katz*, 127 F. Supp. 3d at 1292. Additionally, many courts in this district have held that court reported attendance fees are taxable costs. *Sutton v. Royal Caribbean Cruise Line*, No. 16-24707-CIV, 2018 WL 4282843, at *3 (S.D. Fla. Sept. 7, 2018); *Nelson v. N. Broward Med. Ctr.*, No. 12-61867-CIV, 2014 WL 2195157, at *2 (S.D. Fla. May 27, 2014). Defendant seeks recuperation of court reporter attendance fees related to several key depositions, including the depositions of Plaintiff and his supervisors. Plaintiff did not oppose such request, and I recommend that Defendant be awarded court reporter fees as requested.

However, not all deposition costs are recoverable. For example, shipping and handling costs related to the depositions are not recoverable. *See Watson v. Lake Cty.*, 492 F. App'x 991, 997 (11th Cir. 2012) ("§ 1920 does not authorize recovery of costs for shipment of depositions");

*see also Robinson*, 643 F. Supp. 2d at 1354-55. Accordingly, the Court does not recommend awarding costs for shipping and handling in this case. Likewise, delivery of transcripts, as well as miscellaneous costs associated with depositions such as exhibit costs or condensed transcripts, are not taxable because they are incurred for convenience of counsel, as opposed to being necessarily obtained for use in the case. *See Garden-Aire Vill. S. Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 10-61985-CIV, 2013 WL 12086655, at *2 (S.D. Fla. June 13, 2013) (collecting cases).

Here, Defendant did not justify fees incurred for expedited transcripts or costs related to exhibits. Accordingly, upon review of the record and the invoices supporting Defendant's request for court reports and deposition costs, I recommend limiting the award of costs to the deposition transcripts and court reporter fees, itemized as follows:

| Deposition | Recommended Costs to Award |
| :---: | :---: |
| Plaintiff's Deposition on 4/2/2019 | $1,251.15 |
| Court Reporter Attendance Fee on 4/2/2019 | $655.00 |
| Michelle Kynn Genova Deposition on 5/20/2019 | $470.85 |
| James Powell Deposition on 5/20/2019 | $270.10 |
| Plaintiff Deposition on 5/14/2019 | $405.00 |
| Court Reported Attendance Fee on 5/14/2019 | $180.00 |
| Ryan Lee Barker Deposition on 6/21/2019 | $565.00 |
| Court Reported Attendance Fee on 6/21/2019 | $330.00 |
| Andrew Fowler Deposition on 6/25/2019 | $352.75 |
| Osvaldo Devarona Deposition on 6/27/2019 | $243.00 |
| Court Reported Attendance Fee on 6/27/2019 | $110.00 |
| Deposition of Conrad Young on 5/24/2019 | $646.05 |
| Deposition if Douglas Sobalvarro on 5/23/2019 | $481.80 |

| TOTAL | $5,960.07 |
|---|---|

## E.  Recommendations

For the foregoing reasons, I recommend that Defendant's Motion to Tax Costs (ECF No. 67) be **GRANTED, in part**, and that Defendant be awarded a total of **$7,825.48**. I further recommend that Defendant's Motion for Attorney's Fees (ECF No. 80) be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the Parties have fourteen (14) days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Rodney Smith, United States District Judge. Failure to timely file objections shall bar the Parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security*, 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**RESPECTFULLY SUBMITTED** in Chambers this 7th day of August, 2020.

LAUREN LOUIS
UNITED STATES MAGISTRATE JUDGE